**Sue Ann DOLQUIST, Plaintiff,**

v.

**HEARTLAND PRESBYTERY, et al., Defendants.**

**Civ.A. No. 03–2150–KHV–DJW.**

United States District Court, D. Kansas.

April 28, 2004.

Joseph M. Backer, The Backer Law Firm, LLC, Kansas City, MO, for Plaintiff.

Hillary L. Hayes, Kimberly A. Jones, Blackwell, Sanders, Peper, Martin LLP, Kansas City, MO, Patrick E. McGrath, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Overland Park, KS, for Defendants.

## *MEMORANDUM AND ORDER*

WAXSE, United States Magistrate Judge.

This matter is before the Court on Plaintiff's Motion to Compel Discovery (doc. 74). Plaintiff moves the Court for an Order seeking to compel Defendant Leawood Presbyterian Church ("Leawood Presbyterian") to produce Ky Weekley, and other representatives and witnesses under its control,[1] and for these witnesses to answer deposition questions and reasonable follow-up questions regarding the investigation of Plaintiff's allegations of sexual harassment by a co-worker. Leawood Presbyterian opposes the motion. For the reasons set forth below, the motion is granted.

1. Plaintiff's Motion indicates that pursuant to an agreement of counsel for Plaintiff and Leawood Presbyterian, the same questions and follow-up on these questions were to be asked of many

## I. Procedural History

Plaintiff Sue Ann Dolquist brings suit against defendants Heartland Presbytery ("Heartland"), Leawood Presbyterian and John Miller alleging employment discrimination, harassment and retaliation on account of sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"),[2] as amended, and state law claims for intentional failure to supervise, negligent infliction of emotional distress, outrage, assault, and battery. Plaintiff, a former pastor of Leawood Presbyterian, alleges that she was subjected to a sexually-hostile work environment by Leawood Presbyterian's former choir director and church elder, who allegedly repeatedly made offensive, inappropriate comments of a sexual nature, and engaged in other conduct of a sexual nature including kissing and touching Plaintiff in an offensive manner. Plaintiff further alleges that Defendants failed to take prompt, effective, and remedial action and that the sexually hostile work environment continued throughout Plaintiff's employment until she resigned.

During the course of discovery in this case, Plaintiff communicated her intent to depose several church members of Leawood Presbyterian who were involved with its internal investigation. Plaintiff indicated that she intended to inquire into Leawood Presbyterian's internal investigation and disciplinary proceedings resulting from Plaintiff's complaints of sexual harassment. Counsel for Leawood Presbyterian informed Plaintiff that with respect to the depositions of church members, he was going to instruct witnesses not to answer any questions based upon a First Amendment privilege.

On January 12, 2004, Leawood Presbyterian filed its Motion for Protective Order seeking to preclude Plaintiff from deposing any of its church members based upon a First Amendment privilege. By Memorandum and Order dated March 9, 2004, the Court denied without prejudice Leawood Presbyterian's Motion for Protective Order. In its decision, the Court held that the church au-

witnesses testifying on behalf of Leawood Presbyterian.

2. 42 U.S.C. § 2000e *et seq.*

tonomy doctrine did not justify a blanket protective order precluding Plaintiff from deposing Leawood Presbyterian's church members regarding its internal investigation and actions directly resulting from Plaintiff's sexual harassment complaints. In so holding, the Court found that the information sought to be discovered, information regarding Leawood Presbyterian's internal investigation and disciplinary proceedings resulting from Plaintiff's sexual harassment claims, did not involve any religious belief, practice, or concern. The Court's Memorandum and Order permitted Plaintiff to proceed with the depositions of Leawood Presbyterian's church members and instructed Plaintiff to pose all of the questions she intended to ask.

Although the Court denied Leawood Presbyterian's Motion for a blanket protective order, the Court's Memorandum and Order expressly stated that Leawood Presbyterian could assert individual objections to specific deposition questions. Pursuant to the Court's Memorandum and Order, Leawood Presbyterian produced Ky Weekley for deposition on March 11 and 22, 2004. Mr. Weekley was the moderator of the Administrative Commission over Leawood Presbyterian, which investigated the circumstances surrounding Plaintiff's decision to leave her position as pastor at Leawood Presbyterian. At his deposition, Mr. Weekley testified that he is not employed by either Leawood Presbyterian or Heartland.[3]

During Mr. Weekley's deposition, Plaintiff's counsel asked questions directing at discovering what investigation was conducted regarding Plaintiff's claims of sexual harassment. Counsel for Leawood Presbyterian objected on the grounds that the questions violate the witness' and Leawood Presbyterian's First Amendment privilege under the United States Constitution, Section 7 of the Bill of Rights of the Kansas Constitution, and the clergy-communicant privilege under K.S.A. 60–429 and federal common law.

Plaintiff has now filed her Motion to Compel Discovery seeking to compel Leawood Presbyterian to produce Ky Weekley, and other representatives and witnesses under its control, and for these witnesses to answer deposition questions regarding what investigation was conducted, if any, into the sexual harassment charges made by Plaintiff. Specifically, Plaintiff seeks to compel Mr. Weekley to answer to the following deposition questions:

> What specifically did either Roger Harp or Pat McClelland tell you in that telephone conversation the week before the October the 7th of 2001 regarding the misconduct of John Miller? [4]
>
> What, if anything, did the Administrative Commission do with this information that these women would not come forward? [5]
>
> Has anyone from the Committee on Ministry reported back as to the results of any investigation into the allegations of sexual harassment that Sue Dolquist made against John Robinson? [6]
>
> Was there ever any attempt made to verify any of the charges made by Reverend Dolquist and/or the other women against John Miller? [7]
>
> What was John Miller's reaction to the allegations or the inquiry that was being made by Roger Harp? [8]
>
> You said that M. John Robinson was also involved in some attempt to verify or investigate the charges made by Reverend Dolquist or other women against John Miller. What did he do? [9]
>
> Were the Council Recommendations to Heartland Presbytery ever followed through? [10]
>
> Isn't it true, that you personally spoke out against these recommendations that are in

---

3. Weekley Dep. Tr. 28, lines 9–14, attached as Ex. A to Pl.'s Mot. to Compel Disc. (doc. 74).

4. Weekley Dep. Tr. 26, lines 5–10.

5. Weekley Dep. Tr. 41, lines 21–23.

6. Weekley Dep. Tr. 64, lines 14–18.

7. Weekley Dep. Tr. 133, lines 14–17, attached as Ex. B to Pl.'s Mot. to Compel Disc. (doc. 74).

8. Weekley Dep. Tr. 137, lines 9–11.

9. Weekley Dep. Tr. 139, lines 3–9.

10. Weekley Dep. Tr. 153, lines 3–4.

Exhibit 4 [July 16, 2002 Heartland Presbytery Council Agenda]?[11]

In its response to the Motion to Compel Discovery, Leawood Presbyterian contends that the "ministerial exception," with its origin in the First Amendment of the United States Constitution, operates to bar Plaintiff's requested discovery, completely independent of the church autonomy doctrine. Leawood Presbyterian continues to maintain that the nature of Plaintiff's alleged employment discrimination implicates religious matters, and thus is not actionable under the church autonomy doctrine. It further maintains that Plaintiff's Title VII claim of employment discrimination filed against her former employer is prohibited by the "ministerial exception" regardless of whether the nature of the alleged employment discrimination is characterized as secular or religious.

## II. Discussion

### A. Church Autonomy Doctrine

■ Based upon the same principles applied in the Court's March 9, 2004 Memorandum and Order, the Court determines that the deposition questions Plaintiff seeks to compel Mr. Weekley to answer do not involve any "matters of faith, doctrine, church governance, and polity."[12] Moreover, these questions do not appear to seek answers "rooted in religious beliefs."[13] Mr. Weekley testified that neither sexual harassment nor sexual misconduct is encouraged by the Presbyterian Church, and that neither is a basic tenet or part of the polity of the Presbyterian Church.[14]

The Court further determines that Leawood Presbyterian has failed to show that compelling Mr. Weekley to answer the specific deposition questions at issue in this motion would pose any real danger to First Amendment religious freedom-excessive government entanglement in religious affairs or in the evaluation of religious beliefs. The discovery sought does not appear to intrude upon the spiritual functions of Mr. Weekley or Leawood Presbyterian, nor does it require inquiry into intrinsically ecclesiastical concerns. Furthermore, contrary to Leawood Presbyterian's contention, the Court finds no evidence that compelling Mr. Weekley to answer these questions would "chill" the rights of Mr. Weekley or other church officials in the conduct of their religious affairs or would inhibit church parishioners from engaging freely in the practice of their religious beliefs and activities.

### B. Ministerial Exception

■ Leawood Presbyterian also contends that the "ministerial exception" operates to bar Plaintiff's requested discovery, completely independent of the church autonomy doctrine. It argues that under the "ministerial exception," it matters not whether the nature of the alleged employment discrimination was secular or religious.

The Court is cognizant of the court-created "ministerial exception" that several circuits have applied to bar a minister's Title VII claims against a church employer.[15] The Court, however, finds that the issue of whether the "ministerial exception" applies to bar Plaintiff's Title VII claim in this case, as raised by Leawood Presbyterian in its response to Plaintiff's Motion to Compel Discovery, would be more appropriately resolved by the District Judge in the Motion to Dismiss or for Summary Judgment (doc. 77) currently pending before the Court. While Leawood Presbyterian argues its constitutional position with force and at considerable length, its argument is addressed more as a

11. Weekley Dep. Tr. 154, lines 1–3.

12. *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 655 (10th Cir.2002).

13. *Id.*

14. Weekley Dep. Tr. 138, lines 6–15.

15. *See, e.g., McClure v. Salvation Army*, 460 F.2d 553 (5th Cir.1972); *Rayburn v. General Conf. of Seventh–Day Adventists*, 772 F.2d 1164 (4th Cir. 1985); *EEOC v. Catholic Univ. of Am.*, 83 F.3d 455 (D.C.Cir.1996); *Combs v. Central Texas Annual Conf. of United Methodist Church*, 173 F.3d 343 (5th Cir.1999); *Alicea–Hernandez v. Catholic Bishop of Chicago*, 320 F.3d 698 (7th Cir.2003). *But see Bollard v. California Province of the Soc'y of Jesus*, 196 F.3d 940 (9th Cir.1999).

dispositive issue of the case rather than to the pending question of discovery.

Without deciding the issue of whether the "ministerial exception" would bar Plaintiff's Title VII claim, this Court must determine whether Leawood Presbyterian's assertion of the "ministerial exception" creates a discovery privilege so that Mr. Weekley does not have to answer deposition questions relating to the investigation of Plaintiff's allegations of sexual harassment by a co-worker.

The Court holds that Leawood Presbyterian's mere assertion of the "ministerial exception" as a bar to Plaintiff's Title VII claim does not create a per se discovery privilege as to protect Mr. Weekley from testifying about his knowledge of what investigation was conducted regarding Plaintiff's claims of sexual harassment. Leawood Presbyterian has not cited any cases controlling on this Court that create or recognize a discovery privilege based upon a church employer's assertion of the "ministerial exception" where the plaintiff-minister alleges she was subjected to a sexually hostile work environment. The Court declines to create or recognize such a broad discovery privilege in this case.

This ruling is expressly limited for purposes of discovery. This holding should not be construed as a ruling on the potentially dispositive issue of whether the "ministerial exception" would bar Plaintiff's Title VII claims in this case. That issue will be taken up in Leawood Presbyterian's Motion to Dismiss or for Summary Judgment (doc. 77), filed on April 1, 2004.

### III. Clergy–Communicant Privilege Objections

■ At Mr. Weekley's deposition, Leawood Presbyterian also objected to the questions on the grounds that they violate the witness' clergy-communicant privilege under K.S.A. 60–429 and federal common law. In its response to the Motion to Compel Discovery, Leawood Presbyterian does not reassert

its privilege objection. The Court will therefore deem those objections abandoned and will overrule them.[16]

### IV. Sanctions

■ Plaintiff requests, pursuant to Federal Rule of Civil Procedure Rule 37(a), her expenses and attorneys' fees incurred in filing this Motion to Compel Discovery. Pursuant to Fed.R.Civ.P. 37(a)(4)(A), when a motion to compel is granted or the requested discovery is provided after the motion to compel is filed, "the court *shall,* after affording an opportunity to be heard, require the party … whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion including attorney's fees, unless the court finds that … the opposing party's … response or objection was substantially justified, or that other circumstances make an award of expenses unjust." [17]

In this case, although the Court overrules Leawood Presbyterian's objections to the deposition questions posed by Plaintiff, the Court finds that Leawood Presbyterian was substantially justified in making those objections and holds that an award of expenses would be unjust. Plaintiff's request for sanctions is therefore denied.

IT IS THEREFORE ORDERED THAT Plaintiff's Motion to Compel Discovery (doc. 74) is granted. Leawood Presbyterian's objections based on the grounds that the questions violate the witness' and Leawood Presbyterian's First Amendment privilege under the United States Constitution and Section 7 of the Bill of Rights of the Kansas Constitution, and the clergy-communicant privilege under K.S.A. 60–429 and under federal common law are hereby overruled. Upon reasonable notice, Leawood Presbyterian shall produce witness Ky Weekley for the completion of his deposition and Mr. Weekley shall respond to the deposition questions, includ-

---

**16.** *See Cotracom Commodity Trading Co. v. Seaboard Corp.,* 189 F.R.D. 655, 662 (D.Kan.1999) (objections initially raised but not relied upon response to a motion to compel are deemed abandoned).

**17.** Fed.R.Civ.P. 37(a)(4)(A).

569

ing reasonable follow-up questions, as set forth in this Memorandum and Order.

IT IS FURTHER ORDERED THAT the parties shall bear their own expenses incurred in relation to this Motion to Compel Discovery

IT IS SO ORDERED.